of the morning. Unsurprisingly, I will not read all of the names, but Rogelio Lopez Munoz v. Intercontinental, case number 22-20456. Mr. Shelton gets to go first. Good morning, and may it please the Court. Ian Shelton of Evershed Sutherland on behalf of Appellants. This Court should reverse because the plain language of the OPA statute applies to ITC's enormous oil spill into the Houston Ship Channel. Make no mistake, this was an oil spill. Ninety-one percent of the spill was oil. Sixteen point nine million gallons of it was oil. Twenty-five Olympic swimming pools of it was oil. Ten of the eleven collapsed tanks were oil, naphtha, base oil, gasoline, blendstock, and gasoline. Only one separate tank was xylene. All of the oil spilled, the xylene tank subsequently ruptured, and coming— Or what? Pardon me? Or what? I mean, if it's contaminated, it's contaminated. No, Your Honor, because compared to the sixteen point nine million gallons of oil, there were thirty-eight thousand gallons of xylene. I understand. It may be a minimal amount. But what do you rely upon? Your Honor, the plain language of the statute. And let me explain why. Because for the OPA statute, ITC wants you to ignore the consequences of this case. This was a traditional oil spill with some incidental and subsequent commingling afterwards. Hazardous substance storage in oil facilities is very common. On vessels, on platforms, on storage facilities that are on the water, there are often tanks of hazardous substances. No party had ever before this case said that if there's some incidental commingling after the fact that huge oil spills are taken out of OPA coverage. If the Deepwater Horizon had some incidental commingling of hazardous substances, no one ever said that the whole spill is out of OPA coverage because there's some mixture. That spill— Well, counsel, you talk about nobody's ever said. There's not much case law for us on this for either side. What's your best case that says—and I'll ask Mr. Street. It won't be a surprise, I'm sure. I mean, is there some de minimis combination that he would allow, has to be acknowledged. But you're—I mean, you're saying the plain language. Well, that's a good place to start. But it does seem to me, what support do you have beyond what you're going to tell us the plain language requires? Okay. So, let me walk you through the three points that I think deserve reinforcement and I'll explain how Mir Island Sales ties it together and recognize that the federal government said that OPA applied to a mixed spill. So the three points that I want to make during our short time together are this. Coverage, an exception, and deference. So for coverage, is oil mixed with xylene covered by the express language of OPA? The plain text. Let's look at the text. Let's start with the statute, like this circuit rigorously enforces. 33 U.S.C. 2702, ITC is liable for removal costs. Removal costs are defined in the statute. The term removal is defined as removal of oil and hazardous substances. Then the Clean Water Act, which provides for removal of oil and hazardous substances, is cross-referenced in the liability provision of OPA. This, you don't have to take my word for it, the federal government invoked the cross-reference to the CWA in the liability provision in Mir Island Sales and says we're entitled to recover under OPA for a mixed spill, citing the exact statutes that I was pointing to. 33 U.S.C. 2701.30, removal is defined as removal of right. That language is moot. It's a dead letter. It shouldn't be there. If ITC is right, Mir Island Sales, the federal government invoked the wrong statute, and the court applied the incorrect statute. That is not the case because removal is defined as oil and hazardous substances. So what does ITC say about the plain text? What does ITC say about it? They say, oh well, removal defines removal for purposes of the CWA. But that doesn't make any sense because removal is separately defined in the CWA as oil and hazardous substances. And of course, ITC ignores that the CWA is cross-referenced in the liability provision of OPA. Why are those words in there? Why does it say removal of oil and hazardous substances if they cannot be removed under OPA? Why did the federal government sue in Mir Island Sales to recover that if it doesn't apply? It's not true. Now I want to turn, now that we've talked about coverage, I'd like to discuss the exception because really that is everything that ITC hangs its hat on. It says that the mixed bill falls under the exception, notwithstanding the fact that the statute says that you can recover for removal of oil or hazardous substances. In page 35 of its brief, CERCLA's coverage became OPA's exclusion. And where does ITC start? The definition of hazardous substances in CERCLA. Wrong place to start. You start with the text of OPA, the definition of oil. What does it say? In order to not be an oil, two things have to happen. It needs to be specifically listed or designated and conjunctive, it needs to be covered. Oil mixed with xylene categorically is not specifically listed or designated. Let me explain why. There's a list of lists that the EPA promulgates, 40 CFR part 302.4. Oil mixed with xylene is not on that list. And that regulation, which ITC refers to in its brief as the list of lists, the compilation of all the lists from all the other statutes that EPA helpfully put into one, that regulation has subsection A and B. What does that say? Listed and unlisted. Listed hazardous substances are a subset, a subset of hazardous substances that are covered by OPA. Not everything listed is covered by OPA. How do we know that? Well, if ITC had a silver bullet and could point to a list where oil and xylene is listed, such that it falls within the exception, it would have done that. And it didn't do that because it's not on the list. So what does ITC point to? Well, on page 31 of its brief, it finally gets around to it, it cites 40 CFR 261.3A2IV. What's that? That's a regulation in RCRA that says that a mixture is treated as a hazardous waste under RCRA if a solid waste, which ITC calls oil and water, is mixed with a listed hazardous substance under subpart D of RCRA. So if you have oil and you mix it with a listed substance, that reg says it's covered. It's covered by RCRA. Just because a oil is mixed with a listed hazardous substance doesn't make the whole mixture listed. What is listed is the xylene. The list does not contain oil and hazardous substances, therefore it is not listed. This is a plain language situation, and the Coast Guard, the ITC, they ignore the reference to oil and hazardous substances in OPA's coverage provision. All they cite to in saying that it's specifically listed or designated is the RCRA reg on mixtures. So characteristic hazardous wastes and mixtures that are based on listed hazardous wastes, those are not listed. Those are not listed. So, and I do ask this court to look at 40 between listed and unlisted hazardous wastes. ITC's entire brief, their entire brief is based on the fallacy that if it's covered under RCRA, it's not covered under OPA. That is not what OPA says. It has to be specifically listed or designated, and oil mixed with xylene is not specifically listed or designated. And it will never be specifically listed or designated because xylene is an indigenous component of all petroleum products. Xylene is in crude oil. EPA is not going to add oil and xylene to 304.2 lists because if they did, then OPA's exception would be equivalent to its coverage, and there would be no coverage under OPA. This is why ITC's interpretation eviscerates OPA by saying that the exception swallows the rule. I want to discuss deference. ITC says that there's decades of case law and a longstanding administrative approach. Judge Southwick alluded to this when we started questioning. Actually, there is not decades of case law in this. If there was ITC, the first case they would have cited in their brief would be a case saying that if there's any commingling with hazardous substances, it falls outside the scope of OPA. This is actually an issue . . . I was interpreted as saying there are decades of case law. I think there are decades of no case law on most of what both of you are saying here today. There's Coast Guard regulations, EPA guidance, EPA regulations. It does seem to me our principal cases may be Wilshire, which has a little bit to do with what you were just talking about, about what a product that naturally comes in oral can get separated and then remixed with oral, and where are you when that occurs? It seems to me you're on the circular according to Wilshire. Anyway, correcting a misimpression I gave, I don't see much case law to help either one of you. Your Honor, it's an issue of first impression, and one thing that this circuit is faithful to is applying the plain language of the statute. We're under coverage because it says that you can remove oil and hazardous substances under OPA. We don't fall under the exception because oil mixed with xylene is not specifically listed or designated. This Court cannot and should not give any deference to the Coast Guard because it's contrary to the plain language of the statute. As this panel knows, there is significant discussion, potential Supreme Court cases, about the role that Chevron deference plays in taking away the ability of this Court to interpret the plain language of the statute. Coast Guard got it wrong because they don't address any of the issues that we've discussed. They do not address the statutory coverage language. They do not address the exception. They start with the legislative history and their preferred result. And, Judge Southwick, to your point about this longstanding administrative approach decades of case law, the stuff that ITC cites in its brief relates to coverage under CERCLA. Most of it is pre-OPA, talking about whether mixtures are covered by CERCLA. That's fine. We have no objection to that. We aren't saying that CERCLA did not apply. We're saying OPA applies as well. We're saying both statutes apply to the mixed bill. All their guidance, most of what they cite actually in the brief on the administrative front until they got to the Coast Guard opinions that denied for the first time in this case, that started denying under this mixture theory. The regulations, excuse me, the administrative guidance they cite before in various Coast Guard manuals, that relates to the government's choice to use Superfund to clean up mixed bills rather than OPA. So there's various Coast Guard guidance that says in the case of a mixed bill, we're going to use Superfund. That's the government's prerogative. If both statutes apply, the government can elect which statute to proceed under. If you commit two crimes, the government can decide whether to prosecute you for one or the other or both. But once that did that ability to elect between Superfund and using the Oil Spill Liability Trust Fund, that says absolutely nothing about whether my clients have a private right of action under OPA. I understood your briefs and you seem to be saying it explicitly here. In order for you to succeed, we need to hold that OPA and CERCLA would both apply. Yes, Your Honor. All right. Yes, Your Honor. And there's no problem reaching that conclusion. Well, we'll see. But why isn't there? Because there's no conflict. There is absolutely no conflict. So first, you always start with the statute. And for all the stuff we talked about, after that, then you say, is there any problem applying both statutes? The private right of action for my clients exists only under OPA. There's not some conflicting private right of action for economic damages under CERCLA that would cause some mischief or confusion between the two statutes, right? So put it this way. If this spill had involved the oil and then two days later the hazardous substance and it all went in, so let's say the tanks broke at a different period of time, both statutes would apply there. I mean, there would be no dispute that the oil spill would be covered by OPA and the hazardous substance spill by CERCLA. The fact that they happened at the same time doesn't matter. It doesn't immunize. It doesn't give ITC a defense to liability because it did the bad — two bad things at the same time. The coverage would apply if they were separate. The coverage would still apply when they're together. There's no conflict. Well, counsel, they're certainly not immune, right? I mean, they're going to have — they had to deal with Superfund and CERCLA, which is hardly getting away scot-free. But the thing I'm not — I'm not sure I understand what we're supposed to do is if the government says that we can't extricate the 91 percent from the 9. Obviously, you would say that OPA only applies to the 91 percent of the spill, but if the government says that we can't extricate the 91 and the 9, I'm not sure how we — practically how you would have OPA coverage to the part of the spill that was the oil, on your theory. So, Your Honor, on this, our position is that 100 percent of the spill is covered by OPA, not a segregated part, because of this. When you look at the text, it says removal of oil and hazardous substances. So the text says that you can recover recovery costs for mixed spills under OPA. There needs to be no segregation there. The federal government in its response authority can say, this mixed spill, we're proceeding under CERCLA or we're proceeding under OPA. There's a separate statute cited in our brief that says there can't be any double dipping. You can't get two times the recovery for cleanup costs. You've got to proceed under one or the other. The only thing that OPA gives is a private cause of action to my clients that was enacted for the purpose of providing — overruling Robbins Dry Dock as to these issues and giving a private right of action to our clients that suffered real and concrete injuries. Our clients are physical commodities traders and vessel owners that could not move their This is not attenuated. This is not far afield. And another thing that I wanted to point out, Judge — Well, your time is up. Are you still answering the question? Okay. You'll have some more time later. Okay. Thank you, Judge. May it please the Court, Aaron Street on behalf of Intercontinental Terminals. This Court should affirm for two reasons. First of all, the spill did not involve oil because it was a commingled discharge of oil and hazardous substances. Second of all, the substance that was discharged, a mixture of xylene and oil, is specifically designated or listed pursuant to the mixture rule that was promulgated by the EPA. So I'll actually start with the second point here because I think that leverages off some common ground that the parties have. I understand Mr. Shelton and his client's brief and argument today to recognize that if this spill did consist of something that was specifically designated, that it would be excluded from OPA and they would lose. And what we have here, as we lay out on pages 30 through 32 of our brief, is a listing from the EPA of xylene that's listed in subpart D as a hazardous substance. And then EPA promulgated what was called the mixture rule, which is included at page 9 of our statutory and regulatory addendum. And the mixture rule says whenever you have a mixture of a listed hazardous substance like xylene and it's mixed with solid waste, which everyone agrees oil is solid waste, then that mixture becomes a designated hazardous substance under CERCLA and RCRA. And that's laid out completely on 30 through 32 of our brief. We can walk through each step of that. But I think based on that, this is a discharge of a specifically designated hazardous substance and therefore it's excluded under OPA. Now, I understand my friend to argue that maybe he's arguing two things in response to that in his reply briefing here this morning. Number one is that, well, each specific mixture has to be listed in subpart D as a hazardous substance. And that's just incorrect. The D.C. Circuit directly rejected that argument in American Chemistry Council versus EPA, which is cited in our brief. On page 1065 of that opinion, the court said that EPA does not have to go through the laborious task of listing every single mixture. It doesn't have to say xylene and oil, you know, so-and-so and oil, so-and-so and oil, because a mixture of a hazardous substance and a solid waste, EPA can reasonably deem that to be hazardous. I think the second point he seems to be making this morning is that somehow this is a designation not specifically of xylene but of things that have hazardous characteristics, and that's just not correct. If you look at page 9 of our statutory appendix, 40 CFR 261.3 2B Romanet 4, that refers to mixtures of the listed hazardous waste with solid waste. It's a separate subsection that deals with characteristic mixtures, and we're not dealing with that here because xylene is specifically listed under subpart D. So I think that's the most straightforward textual way. If we again turn back to the definition of oil, I think we're all on the same page there, that oil, dot, dot, dot, quote, does not include any substance which is specifically listed or designated as a hazardous substance under subparagraphs A through F of Section 101.14 of CERCLA. You turn to that provision of CERCLA, CERCLA says the administrator of EPA can designate mixtures and substances under RCRA, under a variety of different statutes, and that's exactly what the administrator did here when he designated xylene and then promulgated the mixture rule. Mr. Street, what do you do with your friend's argument that all petroleum products contain xylene? Sure, Your Honor. EPA has dealt with that specifically in its, dating all the way back to its 1987 guidance memo under CERCLA, and it says there that indigenous products like xylene, it's an indigenous product of oil, is included within oil so long as it's included in an indigenous amount. Now, the problem for my friend is that here that's not what happened. Here we had a tank of xylene and we had tanks of oil products, and the entire tank of xylene mixed with several tanks of oil products, it commingled inside this containment area, and then it was discharged into the navigable waters where it was so commingled that the relevant government agency said, this is a hazardous substance, it's not an oil spill. So we would completely concede that if this was 99.9% oil but they sampled it and said, oh, well, there's indigenous xylene in here, that would be an oil spill. So the parade of horribles of the exclusion eating itself is not what we have here. Let me ask you about a different problem. Let's say it's not a product like xylene that comes from oil, but it's a very small quantity of hazardous substance that would otherwise be covered by zircon. When does the mixture have to occur before the combination matters? I mean, there was a hypothetical mentioned in opposing counsel's argument about which leak occurred first and that sort of thing. I don't think we have that issue here necessarily. But does that matter? When does the mixture have to occur? How much of some hazardous substance that's not oil has to be mixed in? I'm reading today about an awful lot of lead line telephone transmission lines that are buried all over the country. The lead is leaching into the soil. If oil spills into the soil, mixes with the lead. I'm just wondering how does the mechanics of this work in your understanding of when circular applies opposed to OPA? Sure. So starting with the question about the timing of when the combination would happen, I want to first emphasize this court definitely does not have that case here. Pages 7508 and 10622 are the government's report on this incident, and it's very clear that the commingling happened before the discharge, which is the relevant statutory term. Before the retaining wall or whatever it is gave way, that's what you're talking about? Correct. You have the tanks collapsing on day one, let's just say, commingling behind the containment wall, and then three to four days later you have the containment wall failing and the commingled discharge goes into the Houston ship channel. If there were a hypothetical, you know, you can imagine maybe a tanker that has some oil and some hazardous substance and perhaps they discharge from different points on the tanker, it's very conceivable and quite consistent with EPA's guidance that those could be remediated separately. If they did not become commingled completely in the water. That's a judgment call of the agency of whether it's been so commingled that it cannot be remediated under OPA. And the reason is OPA has a much less onerous remediation regime. You can just skim off the oil and decant the oil and take that away and put the water back in the ocean. With CERCLA you have to treat every water molecule basically that's been infected by the hazardous substance. So we had to take, you know, hundreds of thousands of gallons out of the ocean onto a ship and then treat all of that and put it into a deep well. And that, you know, was a $50 million cleanup process that took four years. So as Judge Oldham said, we're not getting off scot-free here. Plus we're designated as a super fund entity for the rest of our existence, which has quite a bit of consequences for lenders and that sort of thing. Now as to your question about the quantum of the hazardous substance, I think the starting point is this Court's decision in Amico, which we cite in our brief, which says hazardous substances does not have a quantum metric. It's any amount of hazardous substance immediately invokes CERCLA to be treated as a cradle-to-grave substance. So I would think so long as it's in a sufficient amount that it could be sampled and determined that it's a hazardous substance, then it goes under CERCLA. Now, again, this is obviously not a close case to anything like that, but that would be something that the agency would do through sampling and determine, okay, this has enough hazardous substance contained in the mixture that the mixture itself becomes a hazardous substance. You mentioned, it was in your brief and you mentioned it in response a moment ago, that if it's an indigenous substance, it has to be an indigenous amount. Is there any evidence in here about what that percentage would be for xylene? I don't think there's any evidence either way, but the evidence that's undisputed in the record is that you had an entire tank of xylene that mixed here. The xylene was obviously separate from the oil at that time and then mixed to the tens of thousands of gallons. So it's clearly not an indigenous substance. The Coast Guard and EPA, which looked at the spill and has in its EPA regulations, which say indigenous amounts are not going to be excluded, looked at it and said these are non-indigenous amounts of the xylene. So there's no material factual dispute on that point. I mentioned that there is a second route to affirming here, and it's the route that the district court took, and we think it's equally persuasive, although it gets into a little more disagreement. And our point there is that in this we agree the key question is what's the meaning of oil? Oil is what triggers liability, and that's really what we're here about. It also happens to trigger the government's response, which shows why you can't have one approach for a private right of action and one approach for the government response, as my friend suggests. But the way we determine the meaning of oil, I think if we were just looking at that in a vacuum, it might be ambiguous. But we know where that word comes from. It comes from the petroleum exclusion of CERCLA, and it is designed to cover and to fill the gap that the CERCLA petroleum exclusion left uncovered, left without a response, left without a private right of action. And so we look to see what was the settled meaning of the petroleum exclusion's reference to oil at the time Congress enacted OPA. And we know from case law and from settled EPA guidance, which we talk about at page 29 of our brief, that the EPA had interpreted the petroleum exclusion very narrowly and had reasoned that mixed spills of hazardous substances and oil were covered under CERCLA. In other words, they were not within the meaning of oil. So as the EPA memo puts it, the petroleum exclusion encompassed only spills strictly of oil. So when Congress enacted OPA and used the same term and used the same structure, it did exactly what my friend said my argument was, which is it took the petroleum exclusion and made it OPA's coverage. So now OPA covers only spills strictly of oil, but it is not, the meaning of oil is not encompassing commingled spills of hazardous substances and oil. And so we are very much making a plain language argument. It's a plain language argument by virtue of what the settled meaning of oil was at the time Congress enacted OPA. And, again, this is not just a question of pre-OPA guidance, as my friend suggested, from the agencies. We have consistent guidance from the agencies after OPA was enacted. And you can see that at page 41 of our brief. This is not something the Coast Guard just came up with with this bill. It's been decades and decades under OPA and then an additional decade under CERCLA. Mr. Street, are you responding to what was said by Mr. Shelford a moment ago, this is the first time the Coast Guard had made a particular determination? I think that's what he said, and that's not correct. So to the extent you understand it, tell me why it's not the first time that this interpretation has been applied. Sure. I think you just need to look at page 41 of our brief. It recounts several Coast Guard regulations that make it clear, well, these are both guidance documents and regulations. Take a look at 27 if you want to notice and comment regulation. That's 15 CFR, which says CERCLA response regulations cover mixtures of oil and hazardous substances, while OPA regulations cover strictly pure oil spills. Page 41 is all the guidance documents after OPA. So I think this is the first time perhaps this issue has been litigated, but that's only because it's been settled for 40 years, and this is the way the agencies have consistently conducted these cleanups. And, in fact, you know, I think the reason is what my friend suggests is at page 15 of his reply brief is, well, the government can just choose which fund to open. It can choose an OPA fund if it feels like it. It can choose a CERCLA fund if it feels like that's the right way to go. But if you think about it, under their understanding this would be, under the government's settled understanding this would be a CERCLA spill. So they would open a CERCLA response fund. They would invoke all of the mechanisms of CERCLA. But then private plaintiffs would sue companies like ours, and they would go to the fund, and the government would say, wait, this is not an OPA spill. You have to go to the OPA fund. But there is no OPA fund, so there's no way for the private plaintiffs to go and make their claims on the proper fund.  So if this is, as my friends think, the government can just open a CERCLA fund, we get sued under OPA. We have a right to go back to the fund, the OPA fund if it's an OPA spill, and say we have a defense to liability. The fund needs to reimburse us. Or we paid over the liability caps. The fund needs to reimburse us. But if the government's only opened a CERCLA fund, then that doesn't work. We have no place to go get our reimbursement. If you can, just concisely express the fundamental fallacy of your opponent's argument on the merits. Very concisely, it's two parts. One is the fact that we all agree that the definition of oil under OPA excludes things that are specifically designated or listed as hazardous substances. And as we explain on pages 30 through 32 of our brief, the EPA has designated xylene as a hazardous substance, and in the mixture rule, it's designated mixtures of xylene and oil as hazardous substances. So it is the discharge that happened here is a discharge of something that is specifically designated. That is the fallacy. And what is the fallacy of his argument, though? The fallacy of his argument is that he seems to resist the idea that EPA has validly designated this mixture as a hazardous substance, when, in fact, it has promulgated the mixture rule, and the D.C. Circuit has upheld that mixture rule as a proper interpretation of the agency's authority. And we were just talking about the second core fallacy, which is the meaning of the word oil. The meaning of the word oil was settled at the time Congress enacted OPA, and it did not include commingled spills of oil and hazardous substances. Mr. Street, can I go back to your first argument? And I want to unpack for a second this idea that oil is a solid waste under the mixture rule. So I take it from what you said at the very beginning, that this is common ground between the parties, but I was going back and looking at the text of the regulation to try to understand how this works, and I'm not sure I follow it, so maybe you can help me. I look at 261.2, which is pretty broad, and it says a solid waste is any discarded material that's not excluded under various regulations. And then I look at 261.4, and it excludes from solid waste a bunch of different oil-based things using the word oil. So oil-buried and hazardous secondary materials, materials inserted into various oil containers, recovered oil, recycled oil, petrochemical recovered oil. I'm not sure what that is, but there's a bunch of oil exclusions. And I realize that this is all in that sort of in parts, in pages 30 to 33 of your brief, you talk about these things, but I'm not sure that we trace through all of the regulations how we get to the idea that straight-up oil and these contain 91 percent mixture with the xylene added would fall in the mixture rule as a solid waste. Sorry for that long question. Right, right. And I think that's partially because that wasn't emphasized very much in the opening brief and it wasn't emphasized in the magistrate judge's opinion. Obviously, if we had another brief, we would have spent probably seven or eight pages walking through each step. I think the short answer, if I'm understanding the question correctly, is that it's discarded oil, and particularly when the oil is mixed with water, that it's considered to be a solid waste under the regs. We could certainly submit a letter on that, but I think that is common ground. And I don't understand my friends dispute that, right? They're just disputing whether it's specifically listed or not, which I think is upheld in the mixture rule. It's also the concept of solid waste is discussed in the D.C. Circuit opinion and I think is a good kind of overview and primer on that point. I did want to mention a response to my friends. I think the one statutory text argument that they really make is the definition of removal, which does refer to oil or hazardous substances. I think there's three problems with that I'll touch on quickly. One is they try to leverage the definition of removal into removal costs, which is a form of liability under OPA. However, they are not seeking removal costs. That's problem number one. Problem number two is if you look at the definition of removal costs under OPA, that's a separately defined term, which is only triggered by oil. So every time you look at the liability provisions of OPA, it's always tied to a discharge of oil. And the third problem with that, and I'll leave the court with this point, is that if you take that argument seriously, that OPA covers oil or hazardous substances, then that just collapses the entire scheme. Then OPA would completely overlap with CERCLA and would cover pure spills of hazardous substances. And I think even my friends recognize that the actual definition of oil does exclude things that are specifically designated as hazardous substances. Your Honor, my colleague talks about the plain language. He spends very little time on the removal issue. If removal costs are recoverable under OPA for mixed spills, as it seems like he concedes,  that means that mixed spills, the fact that you have a mixed spill, that doesn't mean that OPA does not apply to our situation. The statute says removal costs are recoverable by the government. Removal is defined as oil and hazardous substances. If ITC is right, that language shouldn't be in the statute. It's a dead letter. It's a nullity. We still have not gotten, after all this briefing and argument, any persuasive explanation for that. He didn't allude to the fact that the Clean Water Act is cross-referenced in the liability provision of OPA. I don't know if your opposing counsel came up with a completely satisfying answer. But it does seem to me this is a pretty thin reed to support the fairly revolutionary, it seems to me, combination of OPA and CERCLA that you're seeking us to do here, that either could apply to a particular spill. And what you have are some things that are not directly on point, but create something of a mystery as to why they're phrased that way, the removal costs including hazardous substances. And, Your Honor, this is what I wanted to correct as far as the argument on the other side. Their argument is revolutionary. Turning 16.9 million gallons of oil into zero gallons of oil is revolutionary. Their theory applies if it's 99.9 percent oil. But isn't the argument about removal costs, these are in not the core provisions. They're in certain parts of the regulations. And that phrase is there twice, maybe more often than that, that also refers to hazardous substances. And you are bootstrapping that. I mean, that's a loaded way to refer to it. But it does seem to me you're using that little bit of evidence to make this argument. Your Honor, our position is the only one that's supported by the text of the statute. It says hazardous substances. And I wanted to address this point about the mixture regulation. Designated is a synonym for listed. If you look at 40 CFR 302.4a, it said the following listed items are designated as hazardous substances. Mr. Street's saying that everything covered by CERCLA, mixtures, characteristic mixtures, everything is designated. That's not true. The statute means what it says. Specifically listed or designated means exactly what it says. It has to be specifically listed. And that list says what's on the list is designated. Mixtures are not on the list. They don't fall within the exception. He's wrong about that. It just does not apply. And then when you say that it doesn't fall within the exception because listed and designated are synonyms and this mixture isn't on the list, you look at the text of the statute and the federal government sued under OPA to collect recovery costs for a mixed spill when you had a mixed spill. Was the federal government wrong? Did these words in the statute mean nothing? Did Congress not know what it was doing? Did EPA not know what it's doing when it said if it's on this list it's not designated and this mixture is not on the list? Are we just going to defer to the agency when the plain text of the statute says this? There's been no explanation for why these words are in the statute and how specifically listed really means some mixture that's not. Counsel, if you prevailed here, how would this work? I'm not sure I understand. If there's no OPA fund open, what exactly are you asking the court to do? If we sent it back and there's no OPA fund, is the district court supposed to order the creation of a fund or something? Are you recovering directly against ITC under OPA? I've never followed the practicalities of it. Sure, and that's why this agency issue is confusing. We're asserting a private right of action directly against ITC. We did not pursue a claim against this fund. All of these issues related to the fund are irrelevant. We aren't seeking recovery from the fund. We're seeking recovery from OPA under a private cause of action that only exists under OPA. So we're seeking a money judgment from ITC. And they're saying, oh, if we go back to the fund, the fund has said this is a CERCLA event. But what we're saying is that the Coast Guard got it wrong. So if this court issues a decision and says, no, OPA and CERCLA both apply to mixed bills, Coast Guard will look at that opinion and say, we are wrong. We should have opened a OPA fund for this. And if ITC wants to go and make a claim because it pays out, it's over the limit, and it wants to go to the fund, then it can do that. One other thing I wanted to point out in Judge Southwick's opinion. Four seconds. Judge, your opinion on substantial nexus in OPA cases, you basically said that that's what does the work here in these cases of commingled spills. This is just a threshold issue, the early stage. Is the mixture covered by OPA? If we have a situation where it's 99% hazardous substances and 1% oil, the substantial nexus test wouldn't be met. That's where the work gets done on these commingled spills as far as our ability to recover damages. You don't cut us off at the beginning just because it's a mixed spill. If they want to say that, oh, you can't recover because of some causation issue, that's for later in the case. All right. Thank you both for bringing your understandings and your arguments to us. We'll take the case under advisement. We will have